[No. 18105.   Department One.   November 7, 1923.]

## J. C. COOK et al., Appellants, v. A. J. LAWWILL, Respondent.[1]

CARRIERS (3, 4)—REGULATION—AUTO STAGES—CARRYING BETWEEN FIXED TERMINI WITHOUT LICENSE—TAXICAB SERVICE—EVIDENCE—SUFFICIENCY. The owner of taxicabs, without a certificate of necessity for operating between fixed termini, violates the transportation act, Rem. Comp. Stat., § 6387 et seq., where two of its conveyances habitually meet a certain train, soliciting and taking passengers for two nearby cities, for which a uniform fare was paid by each passenger.

Appeal from a judgment of the superior court for Grays Harbor county, Sheeks, J., entered January 12, 1923, dismissing an action to enjoin transportation by motor vehicles without a license. Reversed.

*Anthony W. Dolphin,* for appellants.

*W. H. Abel,* for respondent.

TOLMAN, J.—Appellants are the holders of a certificate of convenience and necessity, issued by the department of public works, authorizing them to operate motor vehicles for the transportation of passengers and express matter between Aberdeen and Melbourne, via Montesano, in Grays Harbor county; have complied with the statutory requirements and rules of the department, and are fully equipped to, and are handling efficiently all of the business offered on that route. They instituted this action as plaintiffs, alleging these qualifications, and that the defendant, respondent here, is not the holder of such a certificate, but nevertheless is operating motor propelled vehicles over their route, transporting passengers and express matter for compensation, in competition with them and in violation

[1]Reported in 219 Pac. 864.

of the statute, and will continue to do so unless enjoined, to their great injury and damage. Answering, respondent denied any violation of the statute on his part, and alleged that he is doing a taxicab business only. From a judgment denying them injunctive relief, and dismissing the action, plaintiffs have appealed.

On the trial below, by stipulation of counsel, the facts qualifying appellants to operate were admitted, and further counsel for respondent offered to stipulate as follows:

"MR. ABEL: Then, as to the operations of the defendant, we in substance claim and I am willing to stipulate that, for a number of years last past, the defendant, under the name of Montesano Auto Company, has operated taxi-cabs; that among other places to which his taxi-cabs operated, is Melbourne and that, at any and all times upon call, he goes to Melbourne or any other place and brings one or any other passengers who desire to go; that he doesn't operate upon any schedule at all but just as the occasion arises; that he doesn't operate between definite termini but will go to any place where he is requested to go and will take them to any place that they request to go and that he always makes a charge for so doing. Now whether that is a taxi-cab service I don't care to commit you,—whether that is a taxi-cab service or not, but that, in substance is what I am willing to admit—and that he expects to continue to operate in that way, and also that he has paid his license, the license required, amounting to some $250, to the state of Washington, for the operation that he conducts; that he did so last year and has done so this year. That is, in substance, what I believe the facts to be."

This offer being in part not acceptable to appellants, each party offered proof upon certain features of the case. That offered by appellants was to the effect that, on at least one occasion, on a Saturday evening when the train from the logging camps was about to arrive

at Melbourne, which train usually brings on Saturday nights a large number of men on their way to spend the week-end at Montesano and Aberdeen, appellants' stage was at the railway station, waiting the arrival of the train, when one of respondent's for hire cars arrived, and apparently a second car belonging to respondent also arrived at the station before the passengers disembarked from the railway train; that a conversation took place between the driver of the stage and one of respondent's drivers in the course of which the latter said, in effect, that he intended to load his car with passengers for Montesano, and that the other of respondent's cars would load passengers for Aberdeen; that they had a right to meet the train and bring in all passengers they could get to ride with them; that the people at Olympia could not stop him, and if an attempt was made so to do he would have someone put in a call for the cars to come over.

On the arrival of the train and the approach of prospective passengers, the drivers of respondent's cars began to call out respectively "This car goes to Monte" (meaning Montesano), and "This car goes to Aberdeen," each indicating his particular car. The witness further testified that he stepped up to the car which had been indicated as bound for Montesano, asked the driver if he were going to Montesano, and received the answer, "Yes, get right in"; that others, including the witness, entered until it was full to capacity; that he was not asked and did not hear the driver consult any passenger as to the admission of later comers. When full, the car departed for Montesano, and on its arrival there, twenty-five cents as fare was collected from each passenger.

Respondent testified that he operated these cars to and from Melbourne on call only, and carried only the

passenger or passengers for whom the call was made, except when others asked to ride, in which case the consent of the passenger or passengers who had engaged the car was first obtained; that passengers were always carried to their particular destinations without reference to where it might be, if willing to pay for the service; that he did not, at any time, charge a fare to each passenger when there were more than one, but that in such cases the usual trip charge was so divided that each passenger paid his proper share. The driver who took part in the conversation with appellant's driver, above referred to, testified that the remarks made by him were jocular in their nature; that he had no authority to make any such statements as to the people in Olympia, or as to what he would do if they acted; asserted that he always operated on call only, and further, that he did not usually call out much, but only answered when asked as to the destination of his car. The witness, however, volunteered the statement, apparently in explanation of the custom as to announcing the destination of particular cars, "we always had one car for Aberdeen, and one for Montesano, and we would rather separate them over there than here and split up the load over here." As this witness testified that he had been a driver for respondent ever since respondent began business, this statement is somewhat significant.

If we are to accept the facts as being only those covered by the offer to stipulate, or as detailed by respondent's testimony, then clearly he was doing a taxicab business only, appellants have no cause for complaint, and the judgment of the trial court was right. But however honest respondent may be in his position, there are certain outstanding facts, admitted or not denied, which lead irresistibly to the conclusion that

his drivers, if instructed as claimed, disregarded his instructions and thereby infringed upon the rights of appellants. We know of no reason why a driver of a taxicab may not, at a proper time and in a proper way, solicit a business which properly belongs to it, but when a driver stands at a railway station and greets disembarking passengers with the cry "this car for Aberdeen" or any other particular destination, it indicates an attempt to carry passengers between fixed termini, which may be done for compensation only by an authorized certificate holder. It also negatives the idea that the car is there on call for a particular person or persons, and hence casts grave doubt upon its being engaged in a taxicab service. If the evidence shows only one occasion positively when this was done, that by no means indicates that there was but one such offense, for respondent's driver says only that he did not usually so call out, but adds that they always had, on the arrival of this Saturday night train, one car for Aberdeen and one for Montesano, which again negatives the idea of operating on call only, as well as clearly indicating that what was done on the particular occasion testified to was but one of a number of similar acts.

We think that these, and other similar inconsistencies which we need not take the time to point out, indicate that, with or without respondent's knowledge, his cars were used on more than one occasion, and probably habitually, in violation of the transportation act, ch. 111, Laws of 1921, p. 338 [Rem. Comp. Stat., § 6387], and to the extent that they have been so used, he should have been enjoined under the rule laid down by this court in *Davis & Banker v. Nickell,* 126 Wash. 421, 218 Pac. 198.

The judgment appealed from will, therefore, be reversed, with directions to the trial court to carefully

preserve to respondent the full right to operate taxi-cabs to and from Melbourne, and all other places served by the appellants under their certificate on call only; that in answering such calls his service shall be confined to the person or persons on whose behalf the call is made, except that by request of, or with the consent of such person or persons, others may be accommodated. All acts or attempted acts in excess of such service upon or along the route covered by appellants' certificate, will be permanently enjoined.

MAIN, C. J., HOLCOMB, PARKER, and MACKINTOSH, JJ., concur.